UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| LINDA MOSER, | ) | |
|---|---|---|
| | ) | Case No. 1:18-cv-225 |
| *Plaintiff*, | ) | |
| | ) | District Judge Atchley |
| v. | ) | |
| | ) | Magistrate Judge Lee |
| TIM DAVIS, JR., and THE CITY OF ETOWAH, TENNESSEE, | ) ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

This case involves an alleged false arrest and excessive use of force. Plaintiff Linda Moser sued Defendants Tim Davis Jr. and the City of Etowah ("Etowah") alleging violations of state law and of her constitutional rights pursuant to 42 U.S.C. § 1983. Before the Court is Defendant Tim Davis, Jr.'s Motion for Summary Judgment [Doc. 38] and Etowah's Motion for Summary Judgment. [Doc. 41]. For the following reasons, Defendant Tim Davis, Jr.'s Motion for Summary Judgment [Doc. 38] is **GRANTED**. Etowah's Motion for Summary Judgment [Doc. 41] is also **GRANTED**.

### I. BACKGROUND

In September of 2017, James Michael Ferguson beat Johnnie Moser, Linda Moser's daughter. [Doc. 38-8 at 65–66]. Johnnie Moser ran from Ferguson to the home of Charles Bearden, a neighbor. [Doc. 38-6 at 43]. Bearden called the police; Officers Davis and Austin Parton of the Etowah Police Department and various other first responders arrived. [Ex. B. at 5:40; Ex. C. at

0:21].¹

Officer Parton spoke to Bearden, and Bearden said that when he left his house, he saw Johnnie Moser running toward him covered in blood. [Doc. 38-9 at 17–18]. Upon arrival, the officers saw Johnnie Moser in Bearden's house and observed a large gash on her head. [Doc. 38-9, at 18; Ex. B. at 1:00–2:08]. After conducting his initial investigation, Officer Davis conducted a sweep of the outside of the house. [Doc. 41-3 at 35–36]. Officer Parton remained near the front of the house. [Doc. 49 at 56–57].

While this was happening, Ferguson woke up Linda Moser. [Doc. 49-2 at 43].² Linda Moser, who lived with Johnnie Moser, was fast asleep and had not heard the assault. [*Id.* at 42]. Ferguson woke up Linda Moser and told her that he needed her car keys and that her daughter had run off. [*Id.* at 43]. Linda Moser then left her home. [Doc. 38-6 at 44–45]. She ran towards an ambulance outside the neighbor's house. [*Id.*] Ferguson joined Linda Moser on the way over, and they met Officer Parton on the porch of Bearden's house. [*Id.*; Doc. 49-2 at 56–57]. Officer Parton, having spoken to Johnnie Moser, recognized Ferguson as the individual who assaulted her. [Doc. 38-9 at 19].

Officer Parton recognized that Linda Moser was visibly upset, and he tried to calm her down by telling Linda Moser her daughter was alright. [Doc. 38-9 at 21]. Parton also repeatedly told Linda Moser to sit down, but she did not listen. [*Id.*] Officer Parton then told Ferguson to turn around so he could detain him. [*Id.* at 22].

By this time, Officer Davis heard the disturbance and was back on the front porch when

---

¹ The body camera video of Officer Parton at the scene is Exhibit B. The body camera video of Officer Davis is Exhibit C.

² Linda Moser was 68 years old and weighed slightly under 120 pounds. (Doc. 49-2 at 50; Doc. 49 at 3.)

Officer Parton attempted to detain Ferguson. [Doc. 41-3 at 37]. Linda Moser yelled, "no he's with me," and grabbed Officer Parton's arm. [Ex. C. at 10:23–10:30].[3] In a deposition, Officer Parton testified that he was distracted by Linda Moser. [Doc. 38-9 at 25]. Yet, on the scene he stated "I didn't feel her at all. I didn't know she was there." [Ex. B. at 21:43–21:45]. The parties dispute how much force Linda Moser used on Officer Parton. Linda Moser represents that it was a very light touch. [Doc. 49 at 7]. Officer Davis and Etowah argue that Linda Moser used significant force which left a red mark on Officer Parton's arm. [Doc. 41-3 at 40–41, 65].

After Linda Moser touched Officer Parton, Officer Davis grabbed her. [Doc. 41-3 at 41]. The parties dispute the amount of force Officer Davis used. Officer Davis insists that he grabbed Linda Moser and had to try twice to pull her away from Officer Parton. [Doc. 41-3 at 45–47]. He then states that her momentum carried her towards the ground, and he tried, unsuccessfully, to slow her down. [Doc. 41-3, at 47]. Linda Moser, however, claims that Officer Davis grabbed her shoulder and her hair and threw her to the ground. [Doc. 49 at 3]. Linda Moser admits that her arms were unbruised. [Doc. 38-6 at 89–90].

The body camera does not provide clarification as to how much force was used. Officer Davis's body camera was positioned in such a way that it is impossible to tell if he grabbed Linda Moser by her hair or just her arm. [Ex. C. at 10:28–10:30]. The video shows that Officer Davis used force, but it does not reveal the degree of that force. [*Id.*]

After Linda Moser fell on the ground, she complained that her leg was injured. She claims that Officer Davis placed his knee and full weight on her back. [Doc. 38-6 at 87]. Officer Davis claims that he did not. [Doc. 41-3 at 47]. While Linda Moser was on the ground, Johnnie Moser repeatedly yelled "get off my mom" while Officer Davis admonished Linda Moser for grabbing

---

[3] Officer Davis's body camera shows that he took photos of Officer Parton's arm and of the bruise on his arm. [Ex. C. at 18:35–18:45]. Those photos, however, were not introduced into evidence.

Officer Parton. [Ex. C. at 10:30–10:56]. Linda Moser remained on the ground for the rest of the interaction until she was taken to the hospital. [Ex. C. 11:00–30:17]. At the hospital, Linda Moser discovered she had a broken hip and femur. [Doc. 38-6 at 31–32].

Linda Moser was charged with obstruction of law enforcement under Tennessee Code Annotated § 39-16-602.[4] [Doc. 38-1]. Linda Moser pled guilty of that charge in state court, and the state court adjudged her guilty of resisting arrest. [*Id.*] Linda Moser does not contest the validity of this conviction.

Linda Moser sued Officer Davis, Officer Parton, Chief Armstrong, the Etowah Police Department, and the City of Etowah. Linda Moser stipulated to the dismissal of Officer Parton, Chief Armstrong, and the Etowah Police Department. [Docs. 24, 34]. Linda Moser has sued Officer Davis asserting: (1) a § 1983 claim for false arrest, (2) a § 1983 claim for excessive force, and (3) various claims brought under Tennessee state law, including common law assault and negligence. [Doc. 1 at 5–9]. Linda Moser has sued Etowah asserting: (1) claims under the Tennessee Governmental Tort Liability Act ("TGTLA"), (2) a claim under Tennessee's Public Records Act ("TPRA"), and (3) a § 1983 claim for failure to train. [*Id.*]

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d

---

[4] The statute provides, "[i]t is an offense for a person to intentionally prevent or obstruct anyone known to the person to be a law enforcement officer . . . from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer or another." Tenn. Code. Ann. § 39-16-602(a).

900, 907 (6th Cir. 2001).

The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Celotex*, 477 U.S. at 325. Once the movant has met this burden, the nonmoving party cannot rest upon the allegations in the pleadings; rather, they must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc*., 285 F.3d 415, 424 (6th Cir. 2002).

At summary judgment, the Court may not weigh the evidence: the Court must determine if a reasonable jury, based on the evidence in the record, could find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A mere scintilla of evidence is not enough. *Id.* at 251–52. If a reasonable juror could not find for the nonmovant, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323.

### III. ANALYSIS

#### A. State-Law Claims

##### 1. TGTLA Claims

Before reaching the merits of this case, the Court must decide if it has jurisdiction over the TGTLA claims. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94–95 (1998). The Court can exercise jurisdiction over claims brought under § 1983 because they raise a federal question. 28 U.S.C. § 1331. But Linda Moser also asserts state-law claims against Etowah and

Officer Davis. At issue is whether the Court can properly exercise supplemental jurisdiction over these claims. 28 U.S.C. § 1367.

The Court can decline to exercise supplemental jurisdiction "in exceptional circumstances [where] there are compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4). A tort claim against an agent of a Tennessee municipality must be brought pursuant to the TGTLA. *See Sneed v. City of Red Bank, Tenn.*, 459 S.W.3d 17, 24–25 (Tenn. 2014). The TGTLA provides "[t]he circuit courts [of Tennessee] have exclusive jurisdiction over any action brought under this chapter." Tenn. Code Ann. § 29-30-307. As a result of this "exclusive jurisdiction" provision, federal district courts routinely refuse to exercise supplemental jurisdiction over state-law claims brought under the TGTLA. *See, e.g.*, *Durham v. Estate of Losleben by and through Tatum*, No. 16-1042, 2017 WL 888357, at *5 (W.D. Tenn. Mar. 6, 2017) (collecting cases). In fact, the Sixth Circuit has held "the Tennessee legislature expressed a clear preference that TGTLA claims be handled by its own state courts. This unequivocal preference of the Tennessee legislature is an exceptional circumstance for declining jurisdiction." *Gregory v. Shelby Cnty., Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001).

While Linda Moser conceded her state-law claims as to Etowah, she persists with TGTLA claims against Officer Davis. Because Tennessee's legislature clearly prefers that TGTLA cases are handled by their state courts, the Court declines to exercise jurisdiction over them. Counts V, VI, and VII [Doc. 1 at 7–9] are **DISMISSED WITHOUT PREJUDICE**.

   2. *TPRA Claims*

Linda Moser also sued Etowah under the TPRA. Tenn. Code Ann. § 10-7-505. Etowah has moved to dismiss Linda Moser's TPRA claim, arguing that it is not actionable because the TPRA

provides exclusive jurisdiction to the state courts and the claim is moot. [Doc. 42 at 19–20]. Linda Moser did not respond this argument. [Doc. 49 at 14].

In this case, Linda Moser's TPRA claim is moot. A claim becomes moot when the Court can no longer grant effective relief. *See Calderon v. Moore*, 518 U.S. 149, 150 (1996) (per curiam). If a municipality acts in good faith, the TPRA provides only one remedy—an injunction requiring the municipality to produce the documents. Tenn. Code. Ann. § 10-7-505(e); *See Memphis Pub. Co. v. City of Memphis*, 871 S.W.2d 681, 689 (Tenn. 1994) (describing the TPRA as "by its terms a limited award provision"). Linda Moser does not allege that Etowah acted in bad faith. [Doc. 1 at 9]. Furthermore, Etowah asserts it gave Linda Moser the relevant documents, and she does not contest that assertion. [Doc. 41 at 20–21]. An injunction would give Linda Moser what she already has, the relevant documents. Therefore, the claim is moot, and Etowah's Motion for Summary Judgment [Doc. 41] is **GRANTED** to the extent it seeks dismissal of Linda Moser's TRPA claim.[5] Count VIII [Doc. 1 at 9] is **DISMISSED WITHOUT PREJUDICE**.

### B. Federal Claims

#### 1. *Individual or Official Capacity*

Before analyzing Linda Moser's § 1983 claims, the Court must determine if she sued Officer Davis in his official or individual capacity. It is not clear on the face of the complaint. The Sixth Circuit, however, does not require a plaintiff to specifically plead whether an individual is being sued in their individual or official capacity. *Moore v. City of Harriman*, 272 F.3d 769, 772–73 (6th Cir. 2001) (en banc). Instead, courts must examine the "course of proceedings" to

---

[5] Furthermore, even if this claim was not moot, Linda Moser's failure to address Etowah's assertions means she waived the claim. E.D. Tenn. L.R. 7.2; *see also*, *Taylor v. UnumProvident Corp.*, 1:03-CV-1009, 2005 WL 3448052, at *2 (E.D. Tenn. Dec. 14, 2005) ("A responding party waives any opposition to an opponent's argument in one of two ways: either by expressly conceding a point or by failing to respond to opponent's argument.").

determine "whether § 1983 defendants have received notice of the plaintiff's intent to hold them personally liable." *Id.* at 772. Thus, the Court can look beyond the complaint to determine if Officer Davis had notice. *See, e.g.*, *Pelfrey v. Chambers*, 43 F.3d 1034, 1037–38 (6th Cir. 1995) (examining a motion filed after the complaint which stated officers had acted outside their scope of employment); *Abdur-Rahman v. Mich. Dep't. of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995) (considering a response to summary judgment).

In this case, Officer Davis had sufficient notice that he was being sued in his individual capacity. First, his employer, Etowah, had already been joined in the suit, and when an individual is sued in their official capacity the claim against him should be dismissed if their employer is already a party to the suit. *See, e.g.*, *Thorpe ex rel D.T. v. Breahitt Cnty. Bd. of Educ.*, 932 F. Supp. 2d 799, 802 (E.D. Ky. 2013); *see also Faith Baptist Church v. Waterford Tp.*, 522 F. App'x 322, 327 (6th Cir. 2013) ("Having sued Waterford Township, the entity for which Bedell was an agent, the suit against Bedell in his official capacity was superfluous.") Second, subsequent briefing shows Officer Davis understood he was being sued in his individual capacity because he raised the defense of qualified immunity. [Doc. 39 at 16–22]. Qualified immunity is available only to defendants in individual-capacity claims. *Benison v. Ross*, 765 F.3d 649, 665 (6th Cir. 2014); *See also Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009). Thus, by raising the defense, Officer Davis demonstrated he had notice of Linda Moser's intention to hold him personally liable. Therefore, the court will analyze any claim against Officer Davis as an individual-capacity claim.

### 2. *False Arrest*

Linda Moser claims that Officer Davis is liable under § 1983 for violating her Fourth Amendment rights by committing a false arrest. An officer commits a false arrest by arresting an individual without probable cause. *Pierson v. Ray*, 386 U.S. 547, 557 (1967). In this case, it is

indisputable that Officer Davis had probable cause to arrest Linda Moser because she pled guilty to violating Tennessee Code Annotated § 39-16-602. [Doc. 38-1]. Because Linda Moser was found guilty of the underlying offense, she cannot contest that the arrest lacked probable cause. *Walker v. Schaeffer*, 854 F.2d 138, 142 (6th Cir. 1988); *see also Campbell v. Knoxville Police Dep't.*, No. 3:10-cv-438, 2011 WL 4479118, at *2–3 (E.D. Tenn. Sept. 26, 2011) ("[T]he Sixth Circuit has held that a finding of guilt in a state court, when the plaintiff had a reasonable and fair opportunity to litigate his claim of illegal arrest, precludes the plaintiff from asserting in federal court that the defendant police officer acted without probable cause in arresting the plaintiff.").

Therefore, as to any claim for false arrest under § 1983, Officer Davis's Motion for Summary Judgment [Doc. 38] is **GRANTED**. Count IV [Doc. 1 at 7] is **DISMISSED WITH PREJUDICE**. Additionally, to hold a municipality liable under § 1983, the Court must find an underlying constitutional violation. *Connick v. Thompson*, 563 U.S. 11, 60–61 (2011). Therefore, Etowah's Motion for Summary Judgment will be **GRANTED** [Doc. 41] as to any claim that it is liable under § 1983 for failure to implement appropriate policies, customs, and practices which led to the false arrest of Linda Moser.

### 3. Use of Excessive Force

Etowah and Officer Davis also argue they are entitled to summary judgment on Linda Moser's claim for use of excessive force. First, Officer Davis asserts that this claim is barred by the *Heck* doctrine. [Doc. 39 at 9]. Second, Etowah and Officer Davis assert that his conduct did not violate the Constitution. [Doc. 39 at 11–16; Doc. 42, at 6–9]. Additionally, Officer Davis argues he is entitled to qualified immunity [Doc. 39 at 17–22], and Etowah argues that there is insufficient evidence to prove a failure-to-train claim. [Doc. 42, at 15–17]. The Court will address these arguments in turn.

a. Heck Doctrine

The *Heck* doctrine bars a plaintiff's § 1983 claim if a judgment in favor of that plaintiff "would necessarily imply the invalidity of his conviction or sentence." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). The *Heck* doctrine may preclude an excessive-force claim if "excessive force is an affirmative defense to the crime." *Parvin v. Campbell*, 641 F. App'x 446, 449 (6th Cir. 2016) (quoting *Shreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010)). Under Tennessee law, excessive force can be an affirmative defense for resisting arrest. Tenn. Code Ann. §§ 39-16-602, 39-11-611. But when a criminal defendant resists the arrest of a third person, the affirmative defense of excessive force applies only if the officer was using excessive force against the third person. *State v. Thompson*, 2011 WL 4954057, at *21 (Tenn. Ct. Crim. App. Oct. 19, 2011).

Linda Moser pled guilty to obstructing a lawful arrest. [Doc. 38-1]. So, in this case, the affirmative defense of excessive force could apply only if the officers used or attempted to use excessive force on Ferguson. *See Thompson*, 2011 WL 3954057, at *21. Linda Moser does not claim Officer Davis used excessive force on Ferguson but claims Officer Davis used excessive force on her. Because the use of excessive force on Linda Moser was unavailable as an affirmative defense to the state crime, the *Heck* doctrine does not bar Linda Moser's claim. *Heck*, 512 U.S. at 487.

b. Qualified Immunity

Qualified immunity "shields governmental officials from monetary damages as long as their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 480 (6th Cir. 2017) (internal quotation marks omitted). In deciding whether a defendant is entitled to qualified immunity, the Court uses a two-part test, and the parts may be conducted in either order. *Id.* (citing

*Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). In part one, the Court determines whether the facts, viewed in the light most favorable to the plaintiff, show that the official violated a constitutional right. *Holzemer v. City of Memphis*, 621 F.3d 512, 519 (6th Cir. 2012). In part two, the Court determines whether the right was clearly established at the time the violation occurred. *Id.* The plaintiff bears the burden of proof in "show[ing] that the defendant is not entitled to qualified immunity." *Flint ex rel. Flint v. Ky. Dep't. of Corr.*, 270 F.3d 340, 347 (6th Cir. 2001).

Thus, the first question is whether Officer Davis violated Linda Moser's Fourth Amendment Rights by using excessive force. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Whether a use of force is excessive turns on the "objective reasonableness of the officer's conduct under the circumstances." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 253 (6th Cir. 2010). The Court utilizes the "perspective of a reasonable officer on the scene, including what the officer knew at the time" to determine if the force used was excessive. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). (citing *Graham*, 490 U.S. at 396). The Court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 389. While these factors provide guidance, the ultimate issue is whether "under the totality of the circumstances, the officer's actions were objectively reasonable." *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007).

In this case, the Court will break down the encounter into two steps: (1) the initial takedown and (2) the force used against Linda Moser when she was on the ground. Officer Davis argues that the Court should consider these two events as one fluid event. (Doc. 52, at 10–11.) However, "[e]xcessive force cases typically require [the] Court to analyze the events in segments." *King v. United States*, 917 F.3d 409, 430–31 (6th Cir. 2019), *cert. granted Brownback v. King*, 140 S. Ct.

2563 (2020), and *cert. denied King v. Brownback*, 140 S. Ct. 2565 (2020) (quoting *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002)) (internal quotation marks omitted); *See also Rudlaff v. Gillespie*, 791 F.3d 658, 641–42 (6th Cir. 2015). In this case, the Court will examine Officer Davis's initial use of force (when he forced Linda Moser to the ground) and his second use of force (when he leaned on Linda Moser while she was on the ground) separately.

The parties dispute central facts which could affect the constitutionality of Officer Davis's actions: (1) the degree of force Linda Moser used against Officer Parton when she was interfering in the arrest of Ferguson, (2) the degree of force used against Linda Moser when she was separated from Officer Parton, and (3) whether Officer Davis leaned on Linda Moser when she fell to the porch. In examining these facts, the court must make all reasonable inferences in favor of Linda Moser. *Holzemer*, 621 F.3d at 519.

Linda Moser contends that when she interfered in the arrest of Ferguson, she merely touched Officer Parton's shoulder. [Doc. 49 at 7]. Officer Davis contends that Linda Moser pulled at Officer Parton's shoulder so hard that she left a bruise on Officer Parton's arm. [Doc. 41-3 at 40–41, 65]. But there is sufficient evidence to create a genuine issue of fact. The photos Officer Davis took of the bruise were not introduced into evidence. [Ex. C. at 18:35–18:45]. Furthermore, at the scene, Officer Parton stated, "I didn't feel her at all. I didn't know she was there." [Ex. B. at 21:43–21:45]. Thus, for the purposes of this motion, the Court infers that Linda Moser merely touched Officer Parton.

The second factual dispute is the degree of force used against Linda Moser when Officer Davis executed a take down. Officer Davis claims that Linda Moser's momentum carried her towards the ground and that he even tried to slow her fall. [Doc. 39 at 7]. Linda Moser claims Officer Davis violently threw her to the ground. [Doc. 49 at 3]. Officer Davis argues no reasonable

juror could find for Linda Moser because she had no bruises on her arm. [*Id.*] While the lack of bruises is some evidence as to Officer Davis's use of force, there is still a genuine issue of material fact as to the degree of force. *See Celotex*, 477 U.S. at 322. Linda Moser testified she was violently grabbed, and the body camera evidence could support her version of events. [*See* Ex. C. at 10:21–10:30]. A reasonable juror could find that Linda Moser was thrown to the ground, so the Court will assume that she was.

Finally, the parties dispute whether Officer Davis put his body weight on Linda Moser when she was on the ground. Officer Davis argues that the video indisputably shows that he did not put his body weight on Linda Moser. [Doc. 39 at 2]. But the video evidence is far from indisputable. Officer Davis could have easily placed his knee on Linda Moser, and it would not appear on video. The body camera never shows his legs. Furthermore, Linda Moser's daughter yelled "get off my mom" which clearly suggests that Officer Davis placed his weight on Linda Moser. [Ex. C. at 10:30–10:56]. Because a reasonable juror could find that Officer Davis put his body weight on Linda Moser, the Court will infer that he did.

c. Initial Take Down

First, the Court will consider the "severity of the crime at issue." *Graham*, 490 U.S. at 396. Linda Moser interfered the arrest of an individual who committed domestic assault. This crime, obstruction of arrest, is not a very serious crime. In fact, it is only a misdemeanor. Tenn. Code. Ann. § 39-16-902(d). Thus, the severity of crime at issue weighs against Officer Parton's use of force.

Second, even taking all assumptions in favor of Linda Moser, she posed a threat to the officers. Even assuming she only touched Officer Parton's arm, all parties were packed on the porch and civilians outnumbered police officers. [Doc. 38-9, at 25]. Linda Moser yelled and

grabbed an officer when he was trying to effect an arrest. In short, the scene was chaotic. At that moment, it was reasonable for Officer Davis to perceive that Linda Moser posed a threat to the officers.

Finally, Linda Moser, while not actively resisting her own arrest, actively resisted the arrest of Ferguson: she was found guilty of obstruction of law enforcement. [Doc. 38-1]. More specifically, she yelled at the Officer Parton and grabbed his shoulder. Linda Moser argues that Officer Davis "should have perceived that the Plaintiff was actually trying to assist the officers in their official duties." [Doc. 49 at 7]. But the issue before the Court is not what Officer Davis should have perceived, it is what a reasonable officer would perceive. *Fox,* 489 F.3d at 237. A reasonable officer would have perceived that Linda Moser was actively preventing another officer from carrying out an arrest.

Therefore, the majority of the *Graham* factors weigh in favor of Officer Davis's use of force. 490 U.S. at 389. While even Linda Moser agrees that Officer Davis could use some force, she maintains it was excessive. [Doc. 49 at 7]. But when an individual actively interferes in an arrest, officers can use a significant amount of force. *Cf. Rudlaff*, 791 F.3d at 641 (stating that an officer can use a taser—multiple times—against a suspect resisting arrest); *See Goodrich v. Everett*, 193 F. App'x 551, 551 (6th Cir. 2006) (holding officers could tackle an individual who was walking away from being arrested). Here, Linda Moser was interfering with police business in such a way that she posed a danger. When Officer Davis pulled her away from Officer Parton and took her to the ground, he acted reasonably under a totality of the circumstances such that his use of force did not violate Linda Moser's Fourth Amendment rights.

Additionally, even if Officer Davis's conduct violated the Constitution, he did not violate a clearly established right. A right is only clearly established if "every reasonable officer would

14

have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The circuit's precedent must place "the constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). When framing the right, the Court walks a tightrope. A constitutional right cannot be defined "at a high-level of generality when performing the qualified immunity analysis . . . ." *Ozza v. City of Dearborn Heights Mich.*, 969 F.3d 265, 279–80 (6th Cir. 2020) (quoting *City of Escondido, Cal. v. Emmons*, 139 S.Ct 500, 503 (2019)). Yet, "[i]f it defeats the qualified-immunity analysis to define the right too broadly . . . it defeats the purpose of § 1983 to define the right too narrowly." *Id.* (quoting *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 508–09 (6th Cir. 2012)).

Linda Moser asks that the Court define the right "as the right to be free from excessive force during an arrest or investigatory stop . . . ." [Doc. 49 at 9]. That definition is far too broad. The right must be defined by referencing at least some of the circumstances actually faced by Officer Davis. *See Hagans*, 695 F.3d at 509 ("The general proposition that the Fourth Amendment prohibits police officers from using excessive force is of little help in determining whether the violative nature of [the defendant's] particular conduct [is] clearly established.") (quoting *al-Kidd*, 563 U.S. at 742) (internal quotation marks omitted). The Court is aware of no case, and Linda Moser provides none, that clearly establishes a right that an individual, who is actively resisting the arrest of another, cannot be subject to a takedown by an officer. *See also Lawler v. City of Taylor*, 268 F. App'x 384, 387 (2008) (finding a takedown reasonable when an individual resisted arrest). Because there is no precedent which establishes this right, even if Officer Davis violated the Constitution he would be entitled to qualified immunity.

Because Officer Davis did not violate Linda Moser's constitutional rights during his initial takedown, Officer Davis's Motion for Summary Judgment [Doc. 38] is **GRANTED IN PART**.

15

Because the initial takedown did not violate the Constitution, Etowah's Motion for Summary Judgment [Doc. 41] is also **GRANTED IN PART**. *See Connick*, 563 U.S. at 60–61.

### d. Kneeling on Linda Moser

Linda Moser also argues that Officer Davis used excessive force when he placed his weight on her when she was already down on the ground. The standards that applied in the previous section apply in this one as well. *Supra* § III(D)(2)(b). Like above, the relevant crime is obstruction of law enforcement, and that factor still weighs against Officer Davis's use of force. *Id.*

However, even on the ground a reasonable officer could believe that Linda Moser posed a threat. Officers Parton and Davis were still on a crowded porch. Officer Davis had mere seconds to decide whether or not to use force to subdue Linda Moser. The scene was chaotic, citizens outnumbered officers, and many of the people were screaming. Officer Davis did not know if Moser could get back up and continue interfering in the arrest of a violent felon. While Moser may have stopped actively resisting arrest, the situation remained fluid, chaotic, and more importantly dangerous.

Now the Court knows that Linda Moser broke her hip and that she was unlikely to stand up and interfere in the arrest of Ferguson. But, the actions of Officer Davis are judged "perspective of a reasonable officer on the scene, including what the officer knew at the time." *Kingsley*, 576 U.S. at 397. Indeed, the Supreme Court has repeatedly cautioned that courts looking back with "the 20/20 vision of hindsight" may too readily find a constitutional violation:

> Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Graham*, 490 U.S. at 396–97 (internal citations and quotation marks omitted) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Even viewing all the facts in the light most favorable to Linda Moser, a reasonable jury could not find that Officer Davis used excessive force against her. The Graham factors weigh in Officer Davis's favor. *Graham*, 490 U.S. at 389. In *Griffin v. Coburn*, 473 F.3d 650, 658 (6th Cir. 2007) the Sixth Circuit held that the Fourth Amendment requires an officer to use the "least intrusive means reasonably available." *Id.* (quoting *St. John v. Hickey*, 411 F.3d 762, 774–745 (6th Cir. 2005)). Officer Davis had limited knowledge of the situation and limited tools to control it. He used his body weight to ensure a violent felon could be arrested, and that use of force was not excessive. Therefore, Officer Davis's action of kneeling on Linda Moser did not violate the Constitution.

Furthermore, even if Officer Davis's use of force was unconstitutional, he is protected by the doctrine of qualified immunity. In determining whether a constitutional violation is clearly established, the Court applies the same standards discussed in the previous section. *Supra* § III(D)(2)(b). The Sixth Circuit has held that using force against a subdued subject violates a clearly established right. *King*, 917 F.3d at 430–31; *see also Judd v. City of Baxter, Tenn.*, 780 F. App'x 345, 349 (6th Cir. 2019) ("There are multiple cases in our circuit holding that kneeing and/or jumping on top of a subdued suspect constitutes excessive force."). But the issue is whether Linda Moser was "subdued."

While there are multiple cases that using force against a subdued subject is excessive, the plaintiffs in these cases are handcuffed or otherwise restrained by some device. For example, in *Judd*, the officer jumped on top of a handcuffed suspect and broke his arm. 780 F. App'x at 870. In *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004), the officers laid on top of the suspect and pepper sprayed him when he was already "immobilized by handcuffs and a hobbling device." Indeed, while some courts, like the court in *King*, describe the right as a right to

be free from force when the individual is subdued, others define the right as a "prohibition against placing weight on [the plaintiff] after he [is] handcuffed." *Hopper v. Phil Plummer*, 887 F.3d 744, 745–45 (6th Cir. 2018) *cert. denied Plummer v. Hopper*, 139 S. Ct. 567 (2018).

The closest case to this case's facts is *Stanfield v. City of Lima*. 727 F. App'x 841 (6th Cir. 2018), which was decided after the events underlying Linda Moser's claims in this case. In *Stanfield* officers pinned the plaintiff to the ground and struck him even though the suspect only offered only slight resistance. *Id.* at 844. The suspect was not handcuffed at the time. *Id.* The Court held that the officers violated the constitution, but it further held that the officers were entitled to qualified immunity. *Id.* at 850–51.

*Stanfield* is illustrative in this case for two reasons. First, the officers conduct was more aggressive. Instead of just leaning on the suspect, they struck him. *Id.* at 849–51. Additionally, the officers outnumbered the suspect. *Id.* at 846–48. Second, this case clarified that kneeling on a non-handcuffed defendant was not clearly established as of October 2013. *Id.* at 850–51. The Court reasoned that the precedent prevented kneeling on a subdued subject, but it further stated, "a reasonable officer would not be on notice that the reasoning [of our precedent] applied to a situation where a suspect was not subdued, *or at least in handcuffs*." *Id.* at 367 (citing *Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009.)) (emphasis added) Since that time, there has not been a body of precedent which supports that an officer who kneels on a non-handcuffed suspect violates a clearly established right.[6]

Linda Moser could argue that her right was clearly established because she was "subdued;" she was on the ground and severely injured. Officer Davis argued that the individual is not subdued until she is in handcuffs. Regardless, at the time of the underlying events, the existing body of

---

[6] *Stanfield* may now provide notice, but it was decided after the relevant conduct in this case. *Id.*

precedent supported the view that to be "subdued" the suspect had to be handcuffed. Thus, even if his actions violated the constitution—which they did not—Officer Davis would be entitled to the defense of qualified immunity. Therefore, Officer Davis's Motion for Summary Judgment [Doc. 38] is **GRANTED IN PART**; Counts I and III [Doc. 1 at 5–6] are **DISMISSED WITH PREJUDICE**. Because Officer Davis's actions did not violate the Constitution, Etowah's Motion for Summary Judgment [Doc. 41] is also **GRANTED IN PART**. *See Connick*, 563 U.S. at 60–61. Therefore, Count II [Doc. 1 at 6] is **DISMISSED WITH PREJUDICE**.

### IV. CONCLUSION

For the reasons stated, Defendant Tim Davis, Jr.'s Motion for Summary Judgment [Doc. 38] is **GRANTED**. Etowah's Motion for Summary Judgment [Doc. 41] is **GRANTED**. All § 1983 claims, Claims I–IV, are **DISMISSED WITH PREJUDICE**. All claims made under state law, Claims V–VIII, are **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED.**

/s/ *Charles E. Atchley Jr.*
**CHARLES E. ATCHLEY JR.**
**UNITED STATES DISTRICT JUDGE**